## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| **CITIBANK, N.A.,** | **CASE NO.:** _____ |
| **Petitioner,** | **JUDGE:** _____ |
| **v.** | |
| **MARVIN L. PARMS,** | |
| **Respondent.** | |

### PETITION AND APPLICATION TO CONFIRM ARBITRATION AWARD
_____

Petitioner Citibank, N.A. ("Citibank"), pursuant to Section 9 of the Federal Arbitration Act, 9 U.S.C. § 9, respectfully requests confirmation of an American Arbitration Association ("AAA") arbitration award ("Arbitration Award") entered by Arbitrator Michael J. Borden on December 23, 2022, in favor of Respondent Marvin L. Parms ("Parms"), a copy of which is attached as **Exhibit 1**.

### PARTIES, JURISDICTION, AND VENUE

1.     This action seeks confirmation of the Arbitration Award issued by an AAA arbitrator.

2.     Citibank is a national banking association organized and exhibits under the laws of the State of South Dakota, with a principal place of business in Sioux Falls, South Dakota.

3.     Parms is an individual who at all times relevant to the events giving rise to this action resided in the State of Ohio.

4.      This Court has jurisdiction pursuant to 9 U.S.C. § 9 and 28 U.S.C. § 1332 because diversity of citizenship exists between Citibank and Parms and because the amount in controversy, exclusive of interest and costs, exceeds the sum of $ 75,000.00.

5.      Pursuant to Section 9 of the Federal Arbitration Act, 9 U.S.C. § 9, Citibank may apply to this Court for an order confirming the Arbitration Award and this Court must confirm the Arbitration Award unless the Arbitration Award is vacated, modified, or corrected as prescribed in the Federal Arbitration Act, 9 U.S.C. §§ 10 and 11.

6.      Parms made an untimely request to modify the Arbitration Award but there are no grounds to vacate, modify, or correct the Arbitration Award.

7.      Venue is proper in this district under 9 U.S.C. § 9 because the arbitration was conducted, and the Arbitration Award was rendered in, this District. Alternatively, venue is proper in this District per 28 U.S.C. §1391 because a substantial part of the events giving rise to the claim occurred in this District.

8.      Per the Arbitration Award, the issues in the underlying arbitration were subject to arbitration under the Agreement attached as **Exhibit 2** and the Agreement attached as **Exhibit 3**.

## <u>NATURE OF THE PROCEEDING</u>

9.      The parties waived oral hearings and the arbitration was submitted on the documents.

10.      On December 23, 2022, the Arbitration Award was duly entered in connection with the arbitration.

11.      The Arbitration Award awarded Parms the sum of $280.78.  **Exhibit 1**.  Parms had requested an award of $1,100,000.00.  **Exhibit 4**.

12.      Citibank satisfied the Arbitration Award.  **Exhibit 5.**

2

13.     Petitioner is entitled to confirmation of the Arbitration Award and entry of final judgment in conformity with the Arbitration Award, pursuant to 9 U.S.C. § 9, which provides that a "court must grant such an order unless the award is vacated, modified, or corrected."

14.     The Arbitration Award is final and binding.

15.     For these reasons, the Arbitration Award is ripe for summary proceedings to confirm the award.

16.     Citibank requests a final judgment confirming and adopting the Arbitration Award in its totality, including entry of injunctive relief.

WHEREFORE, Citibank, N.A. respectfully requests that this Court confirm the Arbitration Award in conformity with the Arbitration Award, and such other relief as the Court may deem property.

Respectfully submitted,

/s/ *Shannon O'Connell Egan*
Shannon O'Connell Egan (0097614)
Harry W. Cappel (0066513)
DINSMORE & SHOHL LLP
255 East Fifth Street, Suite 1900
Cincinnati, Ohio 45202
Tel:  (513) 977-8261
Fax:  (513) 977-8141
Email: shannon.egan@dinsmore.com
         harry.cappel@dinsmore.com
*Counsel for Petitioner Citibank, N.A.*

Dated: February 24, 2023

| Exhibit |
|---|
| **1** |

## AMERICAN ARBITRATION ASSOCIATION

In the Matter of the Arbitration between

Case Number: 01-21-0017-6088

Marvin Parms (Claimant)
-vs-
Citibank (Respondent)

## AWARD OF ARBITRATOR

I, Michael J. Borden, THE UNDERSIGNED ARBITRATOR, having been designated in accordance with the arbitration agreement entered into by the above-named parties, and having been duly sworn, and oral hearings having been waived in accordance with the Rules, and having fully reviewed and considered the written documents submitted to me by the parties, Claimant appearing pro se and Respondent represented by counsel, do hereby, AWARD, as follows:

1. 1.     CLAIMANT is hereby awarded the sum of $280.78 (two hundred eighty dollars and seventy-eight cents) in damages.

1. 2.     Concise Reasons:

After thorough review of the voluminous record in this case, I find as follows.   Claimant has two credit accounts with Respondent (the 4853 account and the 8247 account).   Claimant erred by making his October 4, 2021 payment to the wrong account.   Claimant reasonably and promptly called Respondent to try to sort out the mistake. What followed was a series of phone calls marked by misunderstandings that must have been frustrating to both sides, during which Claimant tried unsuccessfully to have his October 4, 2021 payment applied to the 4853 account.

Based on my careful review of the customer service phone calls, I conclude that Respondent did not provide a "clear and easy way" for Claimant to sort out his error during the long phone calls on October 19, 2021 and November 20, 2021.

Respondent's submissions establish that by the end of November 2021, Respondent did, however, remove the late fee and interest charges that arose from the error.   This accommodation did not, however, remove the harm Claimant suffered from (i) the reduction in his credit limit with Respondent, and (ii) the credit reporting that appears to have resulted in Claimant's credit score being reduced from 784 in November 2021 to 698 (or 673) in December 2021.

This AWARD compensates Claimant for that harm.

1. 3.     The administrative fees of the American Arbitration Association (AAA) totaling $1,900.00 shall be borne as incurred, and the compensation of the arbitrator totaling $1,500.00 shall be borne as incurred.

1. 4.     The above sums are to be paid on or before 30 days from the date of this Award.

1. 5.     This Award is in full settlement of all claims submitted to this Arbitration.   All claims not expressly granted herein are hereby denied.

_____ December 23, 2022                                          _____ /s/ Michael J. Borden

Date                                          Michael J. Borden, Arbitrator

2705

PO Box 790394
St Louis, MO 63179



00000-000002

**Exhibit**
**2**

Dear ▮▮▮▮▮ :

This notice applies to your My Best Buy® Credit Card account ending in ▮▮▮ .

Please see below for important information about changes to the account associated with this credit card. We are changing your card agreement by replacing it with a new one. Please review your new card agreement in full.

Please see below for important information about changes to your account.

| Important Changes to Your Account Terms | |
|---|---|
| The following is a summary of certain changes being made to your account terms. These changes will take effect on 01/25/2016. For more detailed information, please see the Notice of Change in Terms and Right to Opt Out below. | |

| Revised Terms, as of 01/25/2016 | |
|---|---|
| **How to Avoid Paying Interest** | Your due date is at least 25 days after the close of each billing cycle. We will not charge you interest on purchases if you pay your entire balance by the due date each month. |
| **Late Fee** | Up to **$37** |
| **Returned Payment Fee** | Up to **$37** |

<u>Minimum Payment Due.</u> For any minimum payment calculated after 01/25/2016, we are changing the way we calculate your Minimum Payment Due each billing cycle by increasing "$25" in the calculation formulas to "$27". You may be required to pay more of your account balance each billing cycle. As a result, your Minimum Payment Due may increase.

**You have the right to reject the changes summarized above (except the changes to the Minimum Payment Due). However, if you do reject these changes we will close your account, which means you will no longer be able to use your account for new transactions. You can reject these changes by calling us at 1-888-574-1301.**

<u>Arbitration</u>
Effective 01/25/2016, we are changing the Arbitration provision. To review your new Arbitration provision, please see your new card agreement.

**You have the right to reject the change to arbitration. If you reject this change, your account will no longer be subject to an arbitration provision. You can reject the change to arbitration by writing to us at PO Box 790340, St Louis, MO 63179 stating that you would like to reject the arbitration provision. Your letter must be postmarked on or before 01/25/2016. We will not close your account if you reject this change.**

c

### Notice of Change in Terms and Right to Opt Out

**The Changes.** We are changing your card agreement and replacing it with a new one. The effective date of these changes is 01/25/2016.

We have identified below some of the changes to your card agreement (listing the title of the new section and summarizing the change). For complete details regarding those changes, please review the entire section of your new card agreement. Your new card agreement is enclosed. The Supplemental Pricing Information ("Supplement"), which is part of your new card agreement, follows this notice.

- **Authorized Users.** This section describes that you may request additional cards for authorized users, your responsibility to pay charges they make, how we may share information with them and how to remove an authorized user from your account.

1

661446  00100000339

- **Promotions.** This section describes that we may offer you promotional terms.

- **Interest Charges Based on APRs.** This section, its subsections, and the Supplement describe interest charges, when interest charges begin, the grace period on purchases, the calculation of interest charges, the balance subject to interest rate, and the minimum interest charge and how we determine it.

- **Fees.** This section and its subsections describe fees. These include the late fee and returned payment fee. The late fee is increasing and will be up to $37. The returned payment fee is increasing and will be up to $37.

- **Payments.** This section and its subsections describe the minimum payment, how we calculate it, how we apply payments, and payment instructions. We are changing the way we calculate the minimum payment due each billing cycle by increasing "$25" in the calculation formulas to "$27." You may be required to pay more of your account balance each billing cycle.  As a result, your Minimum Payment Due may increase.

- **Arbitration.** This provision, including its sections and subsections, describes arbitration; what claims are covered; how arbitration works, including our payment of fees; and survival and severability of terms. You may only reject this provision by writing to us. See the Important Changes to Your Account Terms or the Right to Opt Out sections for more information.

**Right to Opt Out.** You may opt out of these changes (except the changes to the Minimum Payment Due section).

- **Changes other than to Arbitration.** To opt out of changes other than to Arbitration, you must call or write by 01/25/2016. Call us toll-free at 1-888-574-1301 or write us at PO Box 790394, St Louis, MO 63179 and include your name, address, account number and a statement that you are opting out of these changes. If you notify us that you do not accept these changes, your account will be closed, and we will not make these changes to your account (although we will make the changes to the Minimum Payment Due section).  If you opt out, you will no longer be able to use your account for new transactions.

- **Changes to Arbitration.**  You may opt out of the changes to Arbitration. You can reject the change to arbitration by writing to us at PO Box 790340, St Louis, MO 63179 stating that you would like to reject the arbitration provision. Your letter must be postmarked on or before 01/25/2016. We will not close your account if you only reject the arbitration change.

*********************

SUPPLEMENTAL PRICING INFORMATION

This Supplemental Pricing Information is part of your card agreement. The variable annual percentage rates and daily periodic rates shown below are as of November 1, 2015.

| | Current APR | Current DPR | US Prime Rate plus |
|---|---|---|---|
| Reduced Rate Credit Plan | 11.90% | 0.03260% | |
| Regular Purchases | 25.24% | 0.06915% | 21.99% |

Abbreviations: APR means annual percentage rate; DPR means daily periodic rate.
Minimum Interest Charge:  None

************

**Deferred Interest Promotional Offer Update**

From time to time, as a My Best Buy® Credit Card card holder you may be offered special limited time only deferred interest promotional offers.

Deferred interest promotional offers include the following types of offers:

- No Interest if Paid in Full in 6 Months, Monthly Minimum Payments Required
- No Interest if Paid in Full in 12 Months, Monthly Minimum Payments Required
- No Interest if Paid in Full in 18 Months, Monthly Minimum Payments Required
- No Interest if Paid in Full in 24 Months, Monthly Minimum Payments Required
- No Interest if Paid in Full in 36 Months, Monthly Minimum Payments Required
- No Interest if Paid in Full in 48 Months, Monthly Minimum Payments Required
- No Interest if Paid in Full in 60 Months, Monthly Minimum Payments Required
- No Interest if Paid in Full by a specified date, Monthly Minimum Payments Required

If the balance is not paid in full by the end of the promotional period, interest charges will be imposed from the purchase date at the variable purchase rate on your account which is 25.24% APR.  Variable APRs are as of November 1, 2015 and will vary with the market based on the Prime Rate.

661446  00100000339

These offers are not available all the time and may be limited to specific merchandise and/or have minimum payment and purchase requirements as disclosed in the offer.

Your card agreement, the terms of the offer and applicable law govern these transactions including increasing APRs and fees and termination of the promotional period.

_____

Please save this document for future reference.

If you have questions about these changes call us toll-free at 1-888-574-1301.

---

## Card Agreement

This Card Agreement is your contract with us.  It governs the use of your card and account. The Supplemental Pricing Information ("Supplement") is part of this Agreement.  Please read this Agreement, including the Supplement, carefully.  Keep them for your records.

--------------------------------------------------------------------------------------------------------------------

### Definitions

*account* means the relationship established between you and us by this Agreement.
*APR* means an annual percentage rate.
*authorized user* means any person you allow to use your account.
*card* means one or more cards or other access devices that we give you to get credit under this Agreement.  This includes account numbers.
*we, us,* and *our* mean Citibank, N.A., the issuer of your account.  Citibank, N.A. is located in Sioux Falls, SD.
*you, your,* and *yours* mean the person who applied to open the account.  It also means any other person responsible for complying with this Agreement.

### Your Account

You agree to use your account in accordance with this Agreement.  You must pay us for all amounts due on your account.  This Agreement is binding on you unless you close your account within 30 days after receiving the card and you have not used or authorized use of the card.  Your account must only be used for lawful transactions.

**Authorized Users.**  You may request additional cards for authorized users.  You must pay us for any charges they make even if you did not intend to be responsible for those charges.  You agree that they may receive information about the account, subject to any limitations we impose. You must tell us if you no longer want them to use your account.

**Joint Accounts.**  If this is a joint account, each of you is responsible individually and together for all amounts owed.  Each of you is responsible even if the account is used by only one of you.  You will continue to be liable for the entire balance of the account, even if your co-applicant is ordered by a court to pay us.  You will remain liable to us if your co-applicant fails to pay as ordered by the court.  Your account status will continue to be reported to the credit bureau under each of your names.  The delivery of notices or billing statements to either of you serves as delivery to each of you.  We may rely on instructions given by either of you.  We are not liable to either of you for relying upon such instructions.

**Credit Limit.**  Your credit limit appears on your billing statement. The full amount of your credit limit is available to use where the card is honored.  We may reduce or increase your credit limit at any time for any reason, as permitted by law.  We will notify you of any change, but the change may take effect before you receive the notice.  You should always keep your total balance below the credit limit.  However, if the total balance goes over your credit limit you still must pay us.  If your account has a credit balance, we may reduce the credit balance by any new charges on your account.  You may not maintain a credit balance in excess of your credit limit.

**Billing Statement.**  Your billing statement shows the New Balance.  This is the total amount you owe us on the Statement Closing Date.  To determine the New Balance, we begin with the total balance at the start of the billing cycle.  We add any purchases.  We subtract any credits or payments.  We then add any interest charges or fees and make other adjustments.

Your billing statement also shows your transactions; the Minimum Payment Due and payment due date; your credit limit; and your interest charges and fees.

We deliver a billing statement to only one address.  You must notify Customer Service of a change in address.  We may stop sending you statements if we deem your account uncollectible or start collection proceedings; but we may continue to add interest and fees as permitted by law.

### APRs

**Variable APRs Based on Prime.**  See the Supplement for information about the APRs that apply to your account.  If any APR is based on the U.S. Prime Rate ("Prime Rate"), the APR will equal the Prime Rate plus an additional amount.  The additional amount appears on the Supplement. If the Prime Rate increases, it will cause the APR to increase.  If the Prime Rate decreases, it will cause the APR to decrease. For each billing cycle we use the Prime Rate published in *The Wall Street Journal* two business days before the Statement Closing Date.  If the Prime Rate causes an APR to change, we put the new APR into effect as of the first day of the billing cycle for which we calculate the APR.  We apply the new APR to any existing balances, subject to any promotional rate that may apply. If *The Wall Street Journal* does not publish the Prime Rate, we will use a similar published rate.

**APR for Reduced Rate Credit Plan.** The APR for the 48 month reduced rate credit plan is 11.90%. This APR equals a daily periodic rate of 0.03260%. The 48 month reduced rate credit plan is available for select purchases. The store sales associate or store website will identify which purchases are eligible for this plan.

**Effect of APR Increases.**  If an APR increases, interest charges increase.  Your minimum payment may increase as well.

661446  00100000339

File: 661446.A.02.1.10.01.pdf   Time: 11/9/2015 3:38:48 PM

## Promotions

We may offer promotional terms for all or a part of any balances.  Any promotional terms may apply for a limited period of time.  They will be governed by the terms of the promotional offer and this Agreement.  Your promotional terms will end when the promotional period expires.

If a promotional offer is a deferred interest offer, no interest charges will be imposed on the deferred interest balance if you pay the balance in full by the end of the promotional period for that deferred interest balance. We will impose interest charges on the deferred interest balance at the APR for regular purchases from the date of purchase if you do not pay the balance in full by the end of the promotional period. Deferred interest offers may also be called "Same As Cash Plans".

## Interest Charges Based on APRs

**Interest Charges.**  We impose interest charges when we apply APRs to your account balances.  We do this every day by using a daily periodic rate.  To get a daily periodic rate, we divide the APR by 365.

**When Interest Charges Begin.**  We begin to impose interest charges the first day we add a charge to a daily balance.  The charges we add to a daily balance include purchases, interest charges and fees.  We continue to impose interest charges until we credit your account with full payment of the total amount you owe us.

**Grace Period on Purchases**.  You can avoid interest charges on purchases.This is called a grace period on purchases.  The grace period is at least 25 days.  To get a grace period on purchases, you must pay the New Balance by the payment due date every billing cycle.

If you have a balance subject to a deferred interest promotion and that promotion does not expire before the payment due date, that balance (an "excluded balance") is excluded from the amount you must pay in full to get a grace period on a purchase balance other than an excluded balance.  In addition, if you have a reduced rate credit plan balance, that balance (an "excluded balance") is excluded from the amount you must pay in full to get a grace period on a purchase balance other than an excluded balance. However, you must still pay any separately required payment on the excluded balance. In billing cycles in which payments are allocated to deferred interest balances first, the deferred interest balance will be reduced before any other balance on the account. However, you will continue to get a grace period on purchases, other than an excluded balance, so long as you pay the New Balance (less any excluded balance, plus any separately required payment on an excluded balance) in full by the payment due date each billing cycle. In addition, certain promotional offers not described above may also allow you to have a grace period on purchases without having to pay all or a portion of the promotional balance by the payment due date. If that is the case, the promotional offer will describe what happens.

**Calculation of Interest Charges - Daily Balance Method (Including Current Transactions).**  We calculate interest charges each billing cycle.  To do this:

- We start with each of your different balances.  These balances include, for example,  regular purchases and different promotional balances.  (When we calculate interest charges, we treat each deferred interest transaction separately even if it has the same terms as another deferred interest transaction.)
- We calculate the daily balance for each of your different balances.  To get a daily balance, we start with the balance as of the end of the previous day.  We add any interest charge on the previous day's balance.  (This results in daily compounding of interest charges.)  We add any new charges. We then subtract any new credits or payments.
- We multiply each daily balance by the daily periodic rate that applies to it.  We do this for each day in the billing cycle.  This gives us the daily interest charges for each of your different balances.
- We add up all the daily interest charges.  The sum is the total interest charge for the billing cycle.
- You authorize us to round interest charges to the nearest cent.

When we calculate daily balances, we add a purchase as of the Transaction Date. The Transaction Date is shown on the billing statement. We add a transaction fee to the same balance as the transaction. We generally add other fees  to the regular purchase balance.  We subtract a payment or credit as of the day it is credited to the account and then make other adjustments.  We treat a credit balance as a balance of zero.

**Minimum Interest Charge.**  If we charge you interest, the Supplement shows the minimum amount we will charge. We add the charge to the regular purchase balance or allocate it among one or more of the balances that accrues interest.

**Balance Subject to Interest Rate**   Your statement shows a Balance Subject to Interest Rate.  It shows this for each different balance.  The Balance Subject to Interest Rate is the average of the daily balances during the billing cycle.  A billing cycle begins on the day after the Statement Closing Date of the previous billing cycle.  It includes the Statement Closing Date of the current billing cycle.

## Fees

**Late Fee**. We may add a late fee for each billing cycle in which you have a past due payment. For late fee purposes, you have a past due payment any time you fail to pay the Minimum Payment Due by the payment due date. The fee will be $27; or $37 for any additional past due payment during the next six billing cycles after a past due payment. However, the fee will not exceed the amount permitted by law. We add this fee to the regular purchase balance.

**Returned Payment Fee.** We may add a returned payment fee for a returned payment. A returned payment is an electronic debit, payment check, or similar payment instrument, that is returned unpaid. We may add this fee the first time your payment is returned, even if it is not returned upon resubmission. The fee will be $27; or $37 for any additional returned payment during the same or next six billing cycles after a returned payment. However, the fee will not exceed the amount permitted by law. We add this fee to the regular purchase balance.

## Payments

**Making Payments.**  You may pay all or part of your account balance at any time. However, you must pay at least the Minimum Payment Due by the payment due date each billing cycle.  The sooner you pay the New Balance, the less you will pay in interest charges.

To calculate the Minimum Payment Due, we begin with any past due amount.  We add the amount due on each reduced rate credit plan balance. We add any additional amount specified in a promotional offer.  We add any amount required by the Promotion Calculation.  We also add the largest of the following:

- The Calculated New Balance if it is less than $27; or
- $27 if the Calculated New Balance is at least $27; or

661446  00100000339

4

- 1% of the Calculated New Balance plus the amount of your billed interest charges on that balance, any minimum interest charge allocated to that balance, and any applicable late fee (the result is rounded up to the nearest dollar). However, we subtract interest charges that accrued during prior billing cycles on a deferred interest balance that ended during the billing cycle covered by the statement.

The Calculated New Balance equals the New Balance on the billing statement less any balances subject to a reduced rate credit plan, the Promotion Calculation, or to either of two types of promotional terms. The first type are terms that do not require a minimum payment. The second type are terms that require an additional amount as part of the Minimum Payment Due.

The amount due on a reduced rate credit plan balance is the smaller of:

- The Repayment Percentage times the reduced rate credit plan's Highest Balance plus any credit protection or credit insurance fee allocated to that balance. (The result is rounded up to the nearest dollar.) Or
- The reduced rate credit plan's balance on the Statement Closing Date.

For each reduced rate credit plan balance, the Highest Balance is the highest reduced rate credit plan balance on a Statement Closing Date, less any credit protection or credit insurance fee allocated to that balance for that cycle, since the last time that balance was zero. The balance is zero at account opening. The Repayment Percentage for the 48 month reduced rate credit plan is 2.62850%.

The Promotion Calculation applies to some deferred interest transactions made on or after . The Promotion Calculation is based on the transaction amount as shown on the first statement that displays the transaction. For transactions made between and January 31, 2016, it applies if, paying $25 on this balance each billing cycle would result in repayment before the end of the promotion period. For transactions made on or after February 1, 2016, it applies if paying $27 on this balance each billing cycle would result in repayment before the end of the promotion period. The Promotion Calculation equals 1% of this balance during the promotion period. (The result is rounded up to the nearest cent.) The Promotion Calculation only applies during the promotion period.

The Minimum Payment Due may reflect adjustments to the New Balance. The Minimum Payment Due is never more than the Calculated New Balance plus three amounts. The first is any amount required by a reduced rate credit plan. The second is any amount required by a promotional offer. The third is any amount required by the Promotion Calculation.

**Application of Payments.** Payments in excess of the Minimum Payment Due are applied in accordance with law. This means that we will generally apply payments in excess of the Minimum Payment Due to higher APR balances first. However, excess payments received before a deferred interest promotion expires are applied to the deferred interest promotional balance first in the last two billing cycles of the promotional period. And, if the expiration date of a deferred interest promotion is before the payment due date in the billing cycle in which the deferred interest promotion expires, excess payments received before the deferred interest promotion expires are applied to the deferred interest promotional balance first in the last three billing cycles of the promotional period.Payments equal to or less than the Minimum Payment Due and credits are applied at our discretion and you authorize us to apply payments and credits in a way that is most favorable or convenient for us. This may include applying such payments and credits to lower APR balances first.

**Payment Instructions.** We credit your payments in accordance with our payment instructions on the billing statement. You must pay us in U.S. dollars. To do so, you must use a check, similar instrument, or electronic debit that is drawn on and honored by a bank in the U.S. Do not send cash. We can accept late or partial payments, or payments that reflect "paid in full" or other restrictive endorsements, without losing our rights. We also reserve the right to accept payments made in foreign currency and instruments drawn on funds on deposit outside the U.S. If we do, we select the currency conversion rate. We will then credit your account in U.S. dollars after deducting any costs incurred in processing your payment. Or we may bill you separately for these costs.

## Credit Reporting

We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report. We may report account information in your name and the names of authorized users. We may also obtain follow-up credit reports on you.

If you think we reported incorrect information to a credit bureau, write us at the Customer Service address on the billing statement. We will investigate the matter. We will then tell you if we agree or disagree with you. If we agree with you, we will contact each credit bureau to which we reported and request a correction. If we disagree with you, we will tell you that.

## Information Sharing

You authorize us to share information about you as permitted by law. This includes information we get from you and others. It also includes information about your transactions with us. Please see our Privacy Notice for details about our information sharing practices.

## Changes to this Agreement

**We may change the rates, fees, and terms of this Agreement from time to time as permitted by law. The changes may add, replace, or remove provisions of this Agreement. We will give you advance written notice of the changes and a right to opt out to the extent required by law.**

## Default

You default under this Agreement if you fail to pay the Minimum Payment Due by its due date; go over your credit limit; pay by a check or similar instrument that is not honored or that we must return because it cannot be processed; pay by electronic debit that is returned unpaid; file for bankruptcy; or fail to comply with the terms of this Agreement. If you default, we may close your account and, to the extent permitted by law, demand immediate payment of the total balance.

## Refusal of the Card, Closed Accounts, and Related Provisions

**Refusal of the Card.** We do not guarantee approval of transactions. We are not liable for transactions that are not approved. That is true even if you have enough credit. We may limit the number of transactions approved in one day. If we detect unusual or suspicious activity, we may suspend your credit privileges.

**Preauthorized Charges.** We may suspend any automatic or other preauthorized card charges you arrange with a third party. We may do this if you default; if the card is lost or stolen; or we change your account for any reason. If we do this, you are responsible for paying the third party directly if you wish to do so. You are also responsible for reinstating the preauthorized charges if you wish to do so and we permit it.

**Lost or Stolen Cards or Account Numbers.** You must call us if any card or account number is lost or stolen. You must also call us if you think someone used or may use them without permission. When you call, we may require you to provide information to help our investigation. We may require you to provide this information in writing. For example, we may ask you to identify any charges that were not made by you or someone authorized by you. We may also ask you to confirm that you received no benefit from those charges.

**Closing Your Account.** You may close your account by notifying us in writing or over the phone. If you close your account, you must still repay the total balance in accordance with this Agreement. We may also close your account or suspend account privileges at any time for any reason. We may do this without prior notice to you. We may also reissue a different card at any time. You must return any card to us upon request.

---

## ARBITRATION

*PLEASE READ THIS PROVISION OF THE AGREEMENT CAREFULLY.*

**THIS SECTION PROVIDES THAT DISPUTES MAY BE RESOLVED BY BINDING ARBITRATION. ARBITRATION REPLACES THE RIGHT TO GO TO COURT, HAVE A JURY TRIAL OR INITIATE OR PARTICIPATE IN A CLASS ACTION. IN ARBITRATION, DISPUTES ARE RESOLVED BY AN ARBITRATOR, NOT A JUDGE OR JURY. ARBITRATION PROCEDURES ARE SIMPLER AND MORE LIMITED THAN IN COURT. THIS ARBITRATION PROVISION IS GOVERNED BY THE FEDERAL ARBITRATION ACT (FAA), AND SHALL BE INTERPRETED IN THE BROADEST WAY THE LAW WILL ALLOW.**

**Covered claims**

- *You or we may arbitrate* any claim, dispute or controversy between you and us arising out of or related to your account, a previous related account or our relationship (called "Claims").

661446 00100000339

- **If arbitration is chosen by any party, neither you nor we will have the right to litigate that Claim in court or have a jury trial on that Claim.**

Except as stated below, all Claims are subject to arbitration, no matter what legal theory they're based on or what remedy (damages, or injunctive or declaratory relief) they seek, including Claims based on contract, tort (including intentional tort), fraud, agency, your or our negligence, statutory or regulatory provisions, or any other sources of law; Claims made as counterclaims, cross-claims, third-party claims, interpleaders or otherwise; Claims made regarding past, present, or future conduct; and Claims made independently or with other claims. This also includes Claims made by or against anyone connected with us or you or claiming through us or you, or by someone making a claim through us or you, such as a co-applicant, authorized user, employee, agent, representative or an affiliated/parent/subsidiary company.

**Arbitration limits**

- Individual Claims filed in a small claims court are not subject to arbitration, as long as the matter stays in small claims court.

- We won't initiate arbitration to collect a debt from you unless you choose to arbitrate or assert a Claim against us. If you assert a Claim against us, we can choose to arbitrate, including actions to collect a debt from you. You may arbitrate on an individual basis Claims brought against you, including Claims to collect a debt.

- Claims brought as part of a class action, private attorney general or other representative action can be arbitrated only on an individual basis. The arbitrator has no authority to arbitrate any claim on a class or representative basis and may award relief only on an individual basis. If arbitration is chosen by any party, neither you nor we may pursue a Claim as part of a class action or other representative action. Claims of 2 or more persons may not be combined in the same arbitration. However, applicants, co-applicants, authorized users on a single account and/or related accounts, or corporate affiliates are here considered as one person.

**How arbitration works**

- Arbitration shall be conducted by the American Arbitration Association ("AAA") according to this arbitration provision and the applicable AAA arbitration rules in effect when the claim is filed ("AAA Rules"), except where those rules conflict with this arbitration provision. You can obtain copies of the AAA Rules at the AAA's website (www.adr.org) or by calling 800-778-7879. You or we may choose to have a hearing, appear at any hearing by phone or other electronic means, and/or be represented by counsel. Any in-person hearing will be held in the same city as the U.S. District Court closest to your billing address.

- Arbitration may be requested any time, even where there is a pending lawsuit, unless a trial has begun or a final judgment entered. Neither you nor we waive the right to arbitrate by filing or serving a complaint, answer, counterclaim, motion, or discovery in a court lawsuit. To choose arbitration, a party may file a motion to compel arbitration in a pending matter and/or commence arbitration by submitting the required AAA forms and requisite filing fees to the AAA.

- The arbitration shall be conducted by a single arbitrator in accord with this arbitration provision and the AAA Rules, which may limit discovery. The arbitrator shall not apply any federal or state rules of civil procedure for discovery, but the arbitrator shall honor claims of privilege recognized at law and shall take reasonable steps to protect account information and other confidential information of either party if requested to do so. The arbitrator shall apply applicable substantive law consistent with the FAA and applicable statute of limitations, and may award damages or other relief under applicable law.

- The arbitrator shall make any award in writing and, if requested by you or us, may provide a brief statement of the reasons for the award. An arbitration award shall decide the rights and obligations only of the parties named in the arbitration, and shall not have any bearing on any other person or dispute.

**Paying for arbitration fees**

- We will pay your share of the arbitration fee for an arbitration of Claims of $75,000 or less if they are unrelated to debt collection. Otherwise, arbitration fees will be allocated according to the applicable AAA Rules. If we prevail, we may not recover our arbitration fees, unless the arbitrator decides your Claim was frivolous. All parties are responsible for their own attorney's fees, expert fees and any other expenses, unless the arbitrator awards such fees or expenses to you or us based on applicable law.

**The final award**

- Any award by an arbitrator is final unless a party appeals it in writing to the AAA within 30 days of notice of the award. The arbitration appeal shall be determined by a panel of 3 arbitrators. The panel will consider all facts and legal issues anew based on the same evidence presented in the prior arbitration, and will make decisions based on a majority vote. Arbitration fees for the arbitration appeal shall be allocated according to the applicable AAA Rules. An award by a panel on appeal is final. A final award is subject to judicial review as provided by applicable law.

**Survival and Severability of Terms**

This arbitration provision shall survive changes in this Agreement and termination of the account or the relationship between you and us, including the bankruptcy of any party and any sale of your account, or amounts owed on your account, to another person or entity. If any part of this arbitration provision is deemed invalid or unenforceable, the other terms shall remain in force, except that there can be no arbitration of a class or representative Claim. This arbitration provision may not be amended, severed or waived, except as provided in this Agreement or in a written agreement between you and us.

---

### Governing Law and Enforcing our Rights

**Governing Law.**   Federal law and the law of South Dakota, where we are located, govern the terms and enforcement of this Agreement.

**Enforcing this Agreement.**   We will not lose our rights under this Agreement because we delay in enforcing them or fail to enforce them.

**Collection Costs.**   To the extent permitted by law, you are liable to us for our legal costs if we refer collection of your account to a lawyer who is not our salaried employee. These costs may include reasonable attorneys' fees. They may also include costs and expenses of any legal action.

**Assignment.**   We may assign any or all of our rights and obligations under this Agreement to a third party.

### For Further Information

Call us toll-free for further information. Call the toll-free Customer Service telephone number shown on the billing statement or on the back of your card. You can also call local or toll-free Directory Assistance to get our telephone number.

Ken Stork
Vice President

Citibank, N.A.
P.O. Box 6000
Sioux Falls, SD 57117

---

**Your Billing Rights:**

*Keep this Document for Future Use*

This notice tells you about your rights and your responsibilities under the Fair Credit Billing Act.

***What To Do If You Find A Mistake On Your Statement***

If you think there is an error on your statement, write to us at the address for billing inquiries and correspondence shown on the front of your statement.

In your letter, give us the following information:

· *Account information:* Your name and account number.

· *Dollar amount:* The dollar amount of the suspected error.

661446  00100000339

File: 661446.A.02.1.10.01.pdf   Time: 11/9/2015 3:38:48 PM

· *Description of problem*: If you think there is an error on your bill, describe what you believe is wrong and why you believe it is a mistake.

You must contact us:

· Within 60 days after the error appeared on your statement.

· At least 3 business days before an automated payment is scheduled, if you want to stop payment on the amount you think is wrong.

You must notify us of any potential errors *in writing*. You may call us, but if you do we are not required to investigate any potential errors and you may have to pay the amount in question.

### What Will Happen After We Receive Your Letter

When we receive your letter, we must do two things:

1. Within 30 days of receiving your letter, we must tell you that we received your letter. We will also tell you if we have already corrected the error.
2. Within 90 days of receiving your letter, we must either correct the error or explain to you why we believe the bill is correct.

While we investigate whether or not there has been an error:

· We cannot try to collect the amount in question, or report you as delinquent on that amount.

· The charge in question may remain on your statement, and we may continue to charge you interest on that amount.

· While you do not have to pay the amount in question, you are responsible for the remainder of your balance.

· We can apply any unpaid amount against your credit limit.

After we finish our investigation, one of two things will happen:

· *If we made a mistake:* You will not have to pay the amount in question or any interest or other fees related to that amount.

· *If we do not believe there was a mistake:* You will have to pay the amount in question, along with applicable interest and fees. We will send you a statement of the amount you owe and the date payment is due. We may then report you as delinquent if you do not pay the amount we think you owe.

If you receive our explanation but still believe your bill is wrong, you must write to us within *10 days* telling us that you still refuse to pay. If you do so, we cannot report you as delinquent without also reporting that you are questioning your bill. We must tell you the name of anyone to whom we reported you as delinquent, and we must let those organizations know when the matter has been settled between us.

If we do not follow all of the rules above, you do not have to pay the first $50 of the amount you question even if your bill is correct.

### Your Rights If You Are Dissatisfied With Your Credit Card Purchases

If you are dissatisfied with the goods or services that you have purchased with your credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the purchase.

To use this right, all of the following must be true:

1. The purchase must have been made in your home state or within 100 miles of your current mailing address, and the purchase price must have been more than $50. (Note: Neither of these are necessary if your purchase was based on an advertisement we mailed to you, or if we own the company that sold you the goods or services.)
2. You must have used your credit card for the purchase. Purchases made with cash advances from an ATM or with a check that accesses your credit card account do not qualify.
3. You must not yet have fully paid for the purchase.

If all of the criteria above are met and you are still dissatisfied with the purchase, contact us *in writing* at the address for billing inquiries and correspondence shown on the front of your statement.

While we investigate, the same rules apply to the disputed amount as discussed above. After we finish our investigation, we will tell you our decision. At that point, if we think you owe an amount and you do not pay, we may report you as delinquent.

© 2015 Citibank, N.A.                                                                              C BBPL 1115

                                                                                                          10

                                                                                                          11

8

661446  00100000339

# CARD AGREEMENT

Exhibit
3

This Card Agreement is your contract with us. It governs the use of your card and account. The Supplemental Pricing Information ("Supplement") is part of this Agreement. Please read this Agreement, including the Supplement, carefully. Keep them for your records.

## Definitions

*account* means the relationship established between you and us by this Agreement.

*APR* means an annual percentage rate.

*authorized user* means any person you allow to use your account.

*card* means one or more cards or other access devices that we give you to get credit under this Agreement. This includes account numbers.

*we, us,* and *our* mean Citibank, N.A., the issuer of your account. Citibank, N.A. is located in Sioux Falls, SD.

*you, your,* and *yours* mean the person who applied to open the account. It also means any other person responsible for complying with this Agreement.

## Your Account

You agree to use your account in accordance with this Agreement. You must pay us for all amounts due on your account. This Agreement is binding on you unless you close your account within 30 days after receiving the card and you have not used or authorized use of the card. Your account must only be used for lawful transactions.

**Authorized Users.** You may request additional cards for authorized users. You must pay us for all charges made by authorized users. You must pay us even if you did not intend to be responsible for those charges. You must notify us to withdraw any permission you give to an authorized user to use your account.

**Joint Accounts.** If this is a joint account, each of you is responsible individually and together for all amounts owed. Each of you is responsible even if the account is used by only one of you. You will continue to be liable for the entire balance of the account, even if your co-applicant is ordered by a court to pay us. You will remain liable to us if your co-applicant fails to pay as ordered by the court. Your account status will continue to be reported to the credit bureau under each of your names. The delivery of notices or billing statements to either of you serves as delivery to each of you. We may rely on instructions given by either of you. We are not liable to either of you for relying upon such instructions.

**Credit Limit.** Your credit limit appears on your billing statement. The full amount of your credit limit is available to use where the card is honored. We will notify you separately what part of your credit limit is available for cash advances. That part is called the cash advance limit. We may reduce or increase your credit limit or cash advance limit at any time for any reason as permitted by law. We will notify you of any change, but the change may take effect before you receive the notice. You should always keep your total balance below the credit limit. However, if the total balance goes over your credit limit you still must pay us. If your account has a credit balance, we may reduce the credit balance by any new charges on your account. You may not maintain a credit balance in excess of your credit limit.

**Balance Transfers.** Balance transfers are an account feature. We may make them available to you at our discretion through offers. Balance transfers are subject to the same APR as regular purchases unless the offer tells you otherwise.

**Checks.** We may provide you with convenience checks. When we do, we will tell you in writing whether they may be used for balance transfer transactions or cash advance transactions. If we tell you they may be used for balance transfer transactions, any use will be a balance transfer transaction. You may use them to transfer a balance to your account or make other transactions. If we tell you they may be used for cash advance transactions, any use will be a cash advance transaction even if you use the check to make a payment to another creditor. You may not use convenience checks to pay an amount owed to us under this Agreement or to pay another account with us or an affiliate. We do not certify these checks or return any checks that have been paid.

**Billing Statement.** Your billing statement shows the New Balance. This is the total amount you owe us on the Statement Closing Date. To determine the New Balance, we begin with the total balance at the start of the billing cycle. We add any purchases, balance transfers or cash advances. We subtract any credits or payments. We then add any interest charges or fees and make other adjustments.

We deliver a billing statement to only one address. You must notify Customer Service of a change in address. We may stop sending you statements if we deem your account uncollectible or start collection proceedings; but we may continue to add interest and fees as permitted by law.

# APRs

**Variable APRs Based on Prime.** See the Supplement for information about the APRs that apply to your account. If any APR is based on the U.S. Prime Rate ("Prime Rate"), the APR will equal the Prime Rate plus an additional amount.

The additional amount appears on the Supplement. If the Prime Rate increases, it will cause the APR to increase. If the Prime Rate decreases, it will cause the APR to decrease. For each billing cycle we use the Prime Rate published in *The Wall Street Journal* two business days before the Statement Closing Date. If the Prime Rate causes an APR to change, we put the new APR into effect as of the first day of the billing cycle for which we calculate the APR. We apply the new APR to any existing balances, subject to any promotional rate that may apply. If *The Wall Street Journal* does not publish the Prime Rate, we will use a similar published rate.

**APR for Purchases and Balance Transfers.** See the Supplement.

**APR for Reduced Rate Credit Plan.** See the Supplement. The 48 month reduced rate credit plan is available for select purchases. The store sales associate or store website will identify which purchases are eligible for this plan. The remaining balance of any 48 month reduced rate credit plan that expired before October 1, 2013 is added to the regular purchases balance.

**APR for Cash Advances.** See the Supplement.

**Effect of APR Increases.** If an APR increases, interest charges increase. Your minimum payment may increase as well.

## Promotions

We may offer promotional terms for all or a part of any balances. Any promotional terms may apply for a limited period of time. They will be governed by the terms of the promotional offer and this Agreement. Your promotional terms will end when the promotional period expires. The promotional offer will tell you if we require a separate minimum payment on the promotional balance.

If a promotional offer is a deferred interest offer, no interest charges will be imposed on the deferred interest balance if you pay the balance in full by the end of the promotional period for that deferred interest balance. We will impose interest charges on the deferred interest balance at the APR for regular purchases from the date of purchase if you do not pay the balance in full by the end of the promotional period. Deferred interest offers may also be called "Same As Cash Plans".

## Interest Charges Based on APRs

**Interest Charges.** We impose interest charges when we apply APRs to your account balances. We do this every day by using a daily periodic rate. To get a daily periodic rate, we divide the APR by 365.

**When Interest Charges Begin.** We begin to impose interest charges the first day we add a charge to a daily balance. The charges we add to a daily balance include purchases, balance

3

transfers, and cash advances. They also include interest charges and fees. We continue to impose interest charges until we credit your account with full payment of the total amount you owe us.

**Grace Period on Purchases.** You can avoid interest charges on purchases, but not on balance transfers and cash advances. This is called a grace period on purchases. The grace period is at least 25 days. To get a grace period on purchases, you must pay the New Balance by the payment due date every billing cycle. If you do not, you will not get a grace period until you pay the New Balance for two billing cycles in a row.

If you have a balance subject to a deferred interest promotion or if your statement shows a Waived Interest Charge promotion and that promotion does not expire before the payment due date, that balance (an "excluded balance") is excluded from the amount you must pay in full to get a grace period on a purchase balance other than an excluded balance. In addition, if you have a reduced rate credit plan balance, that balance (an "excluded balance") is excluded from the amount you must pay in full to get a grace period on a purchase balance other than an excluded balance. However, you must still pay any separately required payment on the excluded balance. In billing cycles in which payments are allocated to deferred interest balances first, the deferred interest balance will be reduced before any other balance on the account. However, you will continue to get a grace period on purchases, other than an excluded balance, so long as you pay the New Balance (less any excluded balance, plus any separately required payment on an excluded balance) in full by the payment due date each billing cycle. In addition, certain promotional offers not described above may also allow you to have a grace period on purchases without having to pay all or a portion of the promotional balance by the payment due date. If that is the case, the promotional offer will describe what happens.

**Calculation of Interest Charges – Daily Balance Method (Including Current Transactions).** We calculate interest charges each billing cycle. To do this:

- We start with each of your different balances. These balances include, for example, regular purchases, regular cash advances, and different promotional balances. (When we calculate interest charges, we treat each deferred interest transaction separately even if it has the same terms as another deferred interest transaction.)
- We calculate the daily balance for each of your different balances. To get a daily balance, we start with the balance as of the end of the previous day. We add any interest charge on the previous day's balance. (This

4

results in daily compounding of interest charges.) We add any new charges. We then subtract any new credits or payments.

- We multiply each daily balance by the daily periodic rate that applies to it. We do this for each day in the billing cycle. This gives us the daily interest charges for each of your different balances.
- We add up all the daily interest charges. The sum is the total interest charge for the billing cycle.
- You authorize us to round interest charges to the nearest cent.

When we calculate daily balances, we add a purchase, balance transfer, or cash advance as of the Transaction Date. (The Transaction Date for a balance transfer or cash advance is the date we get a request to complete a transaction. When you send a convenience check directly to someone, the Transaction Date is the date we receive the check for payment. The Transaction Date is on the billing statement.) We add a transaction fee to the same balance as the transaction. We generally add other fees to the regular purchase balance. We add any remaining balance from a balance transfer at a promotional APR to the regular purchase balance. We do this on the day after the promotional period expires. We subtract a payment or credit as of the day it is credited to the account and then make other adjustments. We treat a credit balance as a balance of zero.

**Minimum Interest Charge.** If we charge you interest, the Supplement shows the minimum amount we will charge. We add the charge to the regular purchase balance or allocate it among one or more of the balances that accrues interest.

**Balance Subject to Interest Rate.** Your statement shows a Balance Subject to Interest Rate. It shows this for each different balance. The Balance Subject to Interest Rate is the average of the daily balances during the billing cycle. A billing cycle begins on the day after the Statement Closing Date of the previous billing cycle. It includes the Statement Closing Date of the current billing cycle.

## Fees

**Annual Membership Fee.** If an annual membership fee applies, the Supplement shows it. We will refund this fee if you notify us that you are closing your account within 30 days of the mailing or delivery date of the billing statement on which the fee appears. The fee is otherwise non-refundable. We add this fee to the regular purchase balance.

**Transaction Fee for Cash Advances.** You take a cash advance if you use a cash advance convenience check; get money through an automated teller machine (ATM); or get money through home banking or a financial institution. You

5

also take a cash advance if you make a wire transfer; buy a money order, traveler's check, lottery ticket, casino chip, or similar item; or engage in a similar transaction. For each cash advance we add a transaction fee of 5% of the amount of the cash advance, but not less than $10.

**Transaction Fee for Balance Transfers.** You make a balance transfer if you use a balance transfer convenience check or contact us to transfer a balance. For each balance transfer we add a transaction fee of 5% of the amount of the balance transfer, but not less than $15. This fee is in addition to any periodic fee that may be imposed with a promotional offer.

**Late Fee.** We may add a late fee for each billing cycle in which you have a past due payment. For late fee purposes, you have a past due payment any time you fail to pay the Minimum Payment Due (less the Amount Over Credit Limit shown on your billing statement) by the payment due date. The fee will be $25; or $35 for any additional past due payment during the next six billing cycles after a past due payment. However, the fee will not exceed the amount permitted by law. We add this fee to the regular purchase balance.

**Returned Payment Fee.** We may add a returned payment fee for a returned payment. A returned payment is an electronic debit, payment check, or similar payment instrument, that is returned unpaid. We may add this fee the first time your payment is returned, even if it is not returned upon resubmission. The fee will be $25 for any returned payment. However, the fee will not exceed the amount permitted by law. We add this fee to the regular purchase balance.

**Stop Payment on Convenience Check Fee.** We add a $29 fee if we honor your request to stop payment on a convenience check. Write us at P.O. Box 6000, Sioux Falls, SD 57117 to stop payment on a convenience check. You can also call the Customer Service number on the billing statement. If you call, you must confirm the call in writing within 14 days. A written stop payment order is good for 6 months unless renewed in writing. We add this fee to the regular purchase balance.

## Information on Foreign Currency Conversion

Our network provider is MasterCard. MasterCard converts transactions in foreign currencies into U.S. dollars. MasterCard follows its own procedures to do so. These may change from time to time without notice. Currently, MasterCard uses a conversion rate in effect one day before its transaction processing date. It uses a government-mandated rate if required to do so. If not, it uses a wholesale market rate. A third party may convert a transaction into U.S. dollars or another currency before sending it to MasterCard. In these cases, the third party selects the conversion rate. In all cases, the conversion rate you get is the one used on the transaction's processing date. This may be different from

the one in effect on the Transaction Date or post date for the transaction.

## Payments

**Making Payments.** You may pay all or part of your account balance at any time. However, you must pay at least the Minimum Payment Due by the payment due date each billing cycle. The sooner you pay the New Balance, the less you will pay in interest charges.

To calculate the Minimum Payment Due, we begin with any past due amount. We add any amount in excess of your credit limit. We add the amount due on each reduced rate credit plan balance. We add any additional amount specified in a promotional offer. We add any amount required by the Promotion Calculation. We also add the largest of the following:

- The Calculated New Balance if it is less than $25;
- $25 if the Calculated New Balance is at least $25; or
- 1% of the Calculated New Balance plus the amount of your billed interest charges on that balance, any minimum interest charge allocated to that balance, and any applicable late fee (the result is rounded up to the nearest dollar). However, we subtract interest charges that accrued during prior billing cycles on a deferred interest balance that ended during the billing cycle covered by the statement.

The Calculated New Balance equals the New Balance on the billing statement less any balances subject to a reduced rate credit plan, the Promotion Calculation, or to either of two types of promotional terms. The first type are terms that do not require a minimum payment. The second type are terms that require an additional amount as part of the Minimum Payment Due.

The amount due on a reduced rate credit plan balance is the smaller of:

- The Repayment Percentage times the reduced rate credit plan's Highest Balance plus any credit protection or credit insurance fee allocated to that balance. (The result is rounded up to the nearest dollar.) Or
- The reduced rate credit plan's balance on the Statement Closing Date.

For each reduced rate credit plan balance, the Highest Balance is the highest reduced rate credit plan balance on a Statement Closing Date, less any credit protection or credit insurance fee allocated to that balance for that cycle, since the last time that balance was zero. The balance is zero at account opening. The Repayment Percentage for the 48 month reduced rate credit plan is 2.62850%.

For any 48 month reduced rate credit plan entered into prior to February 1, 2014, upon expiration any remaining balance is added to the Calculated New Balance.

7

The Promotion Calculation applies to some deferred interest transactions made on or after February 1, 2014. The Promotion Calculation is based on the transaction amount as shown on the first statement that displays the transaction. It applies if, paying $25 on this balance each billing cycle would result in repayment before the end of the promotion period. The Promotion Calculation equals 1% of this balance during the promotion period. (The result is rounded up to the nearest cent.) The Promotion Calculation only applies during the promotion period.

The Minimum Payment Due may reflect adjustments to the New Balance. The Minimum Payment Due is never more than the Calculated New Balance plus three amounts. The first is any amount required by a reduced rate credit plan. The second is any amount required by a promotional offer. The third is any amount required by the Promotion Calculation.

**Application of Payments.** Payments in excess of the Minimum Payment Due are applied in accordance with law. This means that we will generally apply payments in excess of the Minimum Payment Due to higher APR balances first. However, excess payments received before a deferred interest promotion expires are applied to the deferred interest promotional balance first in the last two billing cycles of the promotional period. And, if the expiration date of a deferred interest promotion is before the payment due date in the billing cycle in which the deferred interest promotion expires, excess payments received before the deferred interest promotion expires are applied to the deferred interest promotional balance first in the last three billing cycles of the promotional period.  Payments equal to or less than the Minimum Payment Due and credits are applied at our discretion and you authorize us to apply payments and credits in a way that is most favorable or convenient for us. This may include applying such payments and credits to lower APR balances first.

**Payment Instructions.** We credit your payments in accordance with our payment instructions on the billing statement. You must pay us in U.S. dollars. To do so, you must use a check, similar instrument, or electronic debit that is drawn on and honored by a bank in the U.S. Do not send cash. We can accept late or partial payments, or payments that reflect "paid in full" or other restrictive endorsements, without losing our rights. We also reserve the right to accept payments made in foreign currency and instruments drawn on funds on deposit outside the U.S. If we do, we select the currency conversion rate. We will then credit your account in U.S. dollars after deducting any costs incurred in processing your payment. Or we may bill you separately for these costs.

8

## Credit Reporting

We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report. We may report account information in your name and the names of authorized users. We may also obtain follow-up credit reports on you.

If you think we reported incorrect information to a credit bureau, write us at the Customer Service address on the billing statement. We will investigate the matter. We will then tell you if we agree or disagree with you. If we agree with you, we will contact each credit bureau to which we reported and request a correction. If we disagree with you, we will tell you that.

## Information Sharing

You authorize us to share information about you as permitted by law. This includes information we get from you and others. It also includes information about your transactions with us. Please see our Privacy Notice for details about our information sharing practices.

## Changes to this Agreement

**We may change the rates, fees, and terms of this Agreement from time to time as permitted by law. The changes may add, replace, or remove provisions of this Agreement. We will give you advance written notice of the changes and a right to opt out to the extent required by law.**

## Default

You default under this Agreement if you fail to pay the Minimum Payment Due by its due date; go over your credit limit; pay by a check or similar instrument that is not honored or that we must return because it cannot be processed; pay by electronic debit that is returned unpaid; file for bankruptcy; or fail to comply with the terms of this Agreement. If you default, we may close your account and, to the extent permitted by law, demand immediate payment of the total balance.

## Refusal of the Card, Closed Accounts, and Related Provisions

**Refusal of the Card.** We do not guarantee approval of transactions. We are not liable for transactions that are not approved. That is true even if you have enough credit. We may limit the number of transactions approved in one day. If we detect unusual or suspicious activity, we may suspend your credit privileges.

**Preauthorized Charges.** We may suspend any automatic or other preauthorized card charges you arrange with a third party. We may do this if you default; if the card is lost or stolen; or we change your account for any reason. If we do

9

this, you are responsible for paying the third party directly if you wish to do so. You are also responsible for reinstating the preauthorized charges if you wish to do so and we permit it.

**Lost or Stolen Cards,** Account Numbers, or Convenience Checks. You must call us if any card, account number, or check is lost or stolen. You must also call us if you think someone used or may use them without permission. When you call, we may require you to provide information to help our investigation. We may require you to provide this information in writing. For example, we may ask you to identify any charges that were not made by you or someone authorized by you. We may also ask you to confirm that you received no benefit from those charges.

**Closing Your Account.** You may close your account by notifying us in writing or over the phone. If you close your account, you must still repay the total balance in accordance with this Agreement. We may also close your account or suspend account privileges at any time for any reason. We may do this without prior notice to you. We may also reissue a different card at any time. You must return any card to us upon request.

# ARBITRATION

***PLEASE READ THIS PROVISION OF THE AGREEMENT CAREFULLY.*** **IT PROVIDES THAT ANY DISPUTE MAY BE RESOLVED BY BINDING ARBITRATION. ARBITRATION REPLACES THE RIGHT TO GO TO COURT, INCLUDING THE RIGHT TO A JURY AND THE RIGHT TO INITIATE OR PARTICIPATE IN A CLASS ACTION OR SIMILAR PROCEEDING. IN ARBITRATION, A DISPUTE IS RESOLVED BY AN ARBITRATOR INSTEAD OF A JUDGE OR JURY. ARBITRATION PROCEDURES ARE SIMPLER AND MORE LIMITED THAN COURT PROCEDURES.**

***Agreement to Arbitrate:*** Either you or we may, without the other's consent, elect mandatory, binding arbitration for any claim, dispute, or controversy between you and us (called "Claims").

## *Claims Covered*

**What Claims are subject to arbitration?** All Claims relating to your account, a prior related account, or our relationship are subject to arbitration, including Claims regarding the application, enforceability, or interpretation of this Agreement and this arbitration provision. All Claims are subject to arbitration, no matter what legal theory they are based on or what remedy (damages, or injunctive or declaratory relief) they seek. This includes Claims based on contract, tort (including intentional tort), fraud, agency, your or our negligence, statutory or regulatory provisions, or any other sources of law; Claims made as counterclaims, cross-claims, third-

10

party claims, interpleaders or otherwise; and Claims made independently or with other claims. A party who initiates a proceeding in court may elect arbitration with respect to any Claim advanced in that proceeding by any other party. Claims and remedies sought as part of a class action, private attorney general or other representative action are subject to arbitration on an individual (non-class, non-representative) basis, and the arbitrator may award relief only on an individual (non-class, non-representative) basis.

**Whose Claims are subject to arbitration?** Not only ours and yours, but also Claims made by or against anyone connected with us or you or claiming through us or you, such as a co-applicant or authorized user of your account, an employee, agent, representative, affiliated company, predecessor or successor, heir, assignee, or trustee in bankruptcy.

**What time frame applies to Claims subject to arbitration?** Claims arising in the past, present, or future, including Claims arising before the opening of your account, are subject to arbitration.

**Broadest interpretation.** Any questions about whether Claims are subject to arbitration shall be resolved by interpreting this arbitration provision in the broadest way the law will allow it to be enforced. This arbitration provision is governed by the Federal Arbitration Act (the "FAA").

**What about Claims filed in Small Claims Court?** Claims filed in a small claims court are not subject to arbitration, so long as the matter remains in such court and advances only an individual (non-class, non-representative) Claim.

**What about debt collections?** We and anyone to whom we assign your debt will not initiate an arbitration proceeding to collect a debt from you unless you assert a Claim against us or our assignee. We and any assignee may seek arbitration on an individual basis of any Claim asserted by you, whether in arbitration or any proceeding, including in a proceeding to collect a debt. You may seek arbitration on an individual basis of any Claim asserted against you, including in a proceeding to collect a debt.

## How Arbitration Works

**How does a party initiate arbitration?** The party filing an arbitration must choose one of the following two arbitration firms and follow its rules and procedures for initiating and pursuing an arbitration: American Arbitration Association or JAMS. Any arbitration hearing that you attend will be held at a place chosen by the arbitration firm in the same city as the U.S. District Court closest to your then current billing address, or at some other place to which you and we agree in writing. You may obtain copies of the current rules of each of

11

the arbitration firms and forms and instructions for initiating an arbitration by contacting them as follows:

American Arbitration Association
800-778-7879 (toll-free)
Website: www.adr.org

JAMS
800-352-5267 (toll-free)
Website: www.jamsadr.com

At any time you or we may ask an appropriate court to compel arbitration of Claims, or to stay the litigation of Claims pending arbitration, even if such Claims are part of a lawsuit, unless a trial has begun or a final judgment has been entered. Even if a party fails to exercise these rights at any particular time, or in connection with any particular Claims, that party can still require arbitration at a later time or in connection with any other Claims.

**What procedures and law are applicable in arbitration?**
A single, neutral arbitrator will resolve Claims. The arbitrator will be either a lawyer with at least ten years experience or a retired or former judge, selected in accordance with the rules of the arbitration firm. The arbitration will follow procedures and rules of the arbitration firm in effect on the date the arbitration is filed unless those procedures and rules are inconsistent with this Agreement, in which case this Agreement will prevail. Those procedures and rules may limit the discovery available to you or us. The arbitrator will take reasonable steps to protect customer account information and other confidential information if requested to do so by you or us. The arbitrator will apply applicable substantive law consistent with the FAA and applicable statutes of limitations, will honor claims of privilege recognized at law, and will have the power to award to a party any damages or other relief provided for under applicable law. You or we may choose to have a hearing and be represented by counsel. The arbitrator will make any award in writing and, if requested by you or us, will provide a brief statement of the reasons for the award. An award in arbitration shall determine the rights and obligations between the named parties only, and only in respect of the Claims in arbitration, and shall not have any bearing on the rights and obligations of any other person, or on the resolution of any other dispute.

**Who pays?** Whoever files the arbitration pays the initial filing fee. If we file, we pay; if you file, you pay, unless you get a fee waiver under the applicable rules of the arbitration firm. If you have paid the initial filing fee and you prevail, we will reimburse you for that fee. If there is a hearing, we will pay any fees of the arbitrator and arbitration firm for the first day of that hearing. All other fees will be allocated as provided by

the rules of the arbitration firm and applicable law. However, we will advance or reimburse your fees if the arbitration firm or arbitrator determines there is good reason for requiring us to do so, or if you ask us and we determine there is good reason for doing so. Each party will bear the expense of that party's attorneys, experts, and witnesses, and other expenses, regardless of which party prevails, but a party may recover any or all expenses from another party if the arbitrator, applying applicable law, so determines.

**Who can be a party?** Claims must be brought in the name of an individual person or entity and must proceed on an individual (non-class, non-representative) basis. The arbitrator will not award relief for or against anyone who is not a party. If you or we require arbitration of a Claim, neither you, we, nor any other person may pursue the Claim in arbitration as a class action, private attorney general action or other representative action, nor may such Claim be pursued on your or our behalf in any litigation in any court. Claims, including assigned Claims, of two or more persons may not be joined or consolidated in the same arbitration. However, applicants, co-applicants, authorized users on a single account and/or related accounts, or corporate affiliates are here considered as one person.

**When is an arbitration award final?** The arbitrator's award is final and binding on the parties unless a party appeals it in writing to the arbitration firm within fifteen days of notice of the award. The appeal must request a new arbitration before a panel of three neutral arbitrators designated by the same arbitration firm. The panel will consider all factual and legal issues anew, follow the same rules that apply to a proceeding using a single arbitrator, and make decisions based on the vote of the majority. Costs will be allocated in the same way they are allocated for arbitration before a single arbitrator. An award by a panel is final and binding on the parties after fifteen days has passed. A final and binding award is subject to judicial review and enforcement as provided by the FAA or other applicable law.

### *Survival and Severability of Terms*

This arbitration provision shall survive: (i) termination or changes in the Agreement, the account, or the relationship between you and us concerning the account; (ii) the bankruptcy of any party; and (iii) any transfer, sale or assignment of your account, or any amounts owed on your account, to any other person or entity. If any portion of this arbitration provision is deemed invalid or unenforceable, the entire arbitration provision shall not remain in force. No portion of this arbitration provision may be amended, severed or waived absent a written agreement between you and us.

## Governing Law and Enforcing our Rights

**Governing Law.** Federal law and the law of South Dakota, where we are located, govern the terms and enforcement of this Agreement.

**Enforcing this Agreement.** We will not lose our rights under this Agreement because we delay in enforcing them or fail to enforce them.

**Collection Costs.** To the extent permitted by law, you are liable to us for our legal costs if we refer collection of your account to a lawyer who is not our salaried employee. These costs may include reasonable attorneys' fees. They may also include costs and expenses of any legal action.

**Assignment.** We may assign any or all of our rights and obligations under this Agreement to a third party.

## For Further Information

Call us toll-free for further information. Call the toll-free Customer Service telephone number shown on the billing statement or on the back of your card. You can also call local or toll-free Directory Assistance to get our telephone number.

Ken Stork
Vice President

Citibank, N.A.
P.O. Box 6000
Sioux Falls, SD 57117

## <u>Your Billing Rights</u>: <u>Keep this Document for Future Use</u>

**This notice tells you about your rights and our responsibilities under the Fair Credit Billing Act.**

### <u>What To Do If You Find A Mistake On Your Statement</u>

If you think there is an error on your statement, write to us at the address for billing inquiries and correspondence shown on the front of your statement.

In your letter, give us the following information:
- <u>Account information</u>: Your name and account number.
- <u>Dollar amount</u>: The dollar amount of the suspected error.

- <u>Description of problem</u>: If you think there is an error on your bill, describe what you believe is wrong and why you believe it is a mistake.

You must contact us:
- Within 60 days after the error appeared on your statement.
- At least 3 business days before an automated payment is scheduled, if you want to stop payment on the amount you think is wrong.

You must notify us of any potential errors <u>in writing</u>. You may call us, but if you do we are not required to investigate any potential errors and you may have to pay the amount in question.

**What Will Happen After We Receive Your Letter**
**When we receive your letter, we must do two things:**
1. Within 30 days of receiving your letter, we must tell you that we received your letter. We will also tell you if we have already corrected the error.
2. Within 90 days of receiving your letter, we must either correct the error or explain to you why we believe the bill is correct.

**While we investigate whether or not there has been an error:**
- We cannot try to collect the amount in question, or report you as delinquent on that amount.
- The charge in question may remain on your statement, and we may continue to charge you interest on that amount.
- While you do not have to pay the amount in question, you are responsible for the remainder of your balance.
- We can apply any unpaid amount against your credit limit.

**After we finish our investigation, one of two things will happen:**
- <u>If we made a mistake</u>: You will not have to pay the amount in question or any interest or other fees related to that amount.
- <u>If we do not believe there was a mistake</u>: You will have to pay the amount in question, along with applicable interest and fees. We will send you a statement of the amount you owe and the date payment is due. We may then report you as delinquent if you do not pay the amount we think you owe.

If you receive our explanation but still believe your bill is wrong, you must write to us within <u>10 days</u> telling us that you still refuse to pay. If you do so, we cannot report you as delinquent without also reporting that you are questioning your bill. We must tell you the name of anyone to whom we

15

reported you as delinquent, and we must let those organizations know when the matter has been settled between us.

If we do not follow all of the rules above, you do not have to pay the first $50 of the amount you question even if your bill is correct.

## Your Rights If You Are Dissatisfied With Your Credit Card Purchases

If you are dissatisfied with the goods or services that you have purchased with your credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the purchase.

To use this right, all of the following must be true:

1. The purchase must have been made in your home state or within 100 miles of your current mailing address, and the purchase price must have been more than $50. (Note: Neither of these are necessary if your purchase was based on an advertisement we mailed to you, or if we own the company that sold you the goods or services.)
2. You must have used your credit card for the purchase. Purchases made with cash advances from an ATM or with a check that accesses your credit card account do not qualify.
3. You must not yet have fully paid for the purchase.

If all of the criteria above are met and you are still dissatisfied with the purchase, contact us in writing at the address for billing inquiries and correspondence shown on the front of your statement.

While we investigate, the same rules apply to the disputed amount as discussed above. After we finish our investigation, we will tell you our decision. At that point, if we think you owe an amount and you do not pay, we may report you as delinquent.

© 2013 Citibank, N.A.

**Egan, Shannon**

| | |
|---|---|
| **From:** | Marvin L Parms <██████████████████> |
| **Sent:** | Tuesday, January 24, 2023 5:22 PM |
| **To:** | Egan, Shannon; 'ProSeManager2@adr.org' |
| **Cc:** | Cappel, Harry |
| **Subject:** | RE: Marvin Parms v. Citibank - Case 01-21-0017-6088 |

**Exhibit 4**

**Importance:** High

Marvin Parms
1964 Hibbard Drive
Stow, Ohio 44224
██████████████

Pro Se Arbitration Administration Team
ProSeManager2@adr.org
Po Box 19609, Johnston, RI 02919

Pro Se Manger 2

Re: Case Marvin Parms v. Citibank, N.A
Case Number 01-21-0017-6088

MODIFICATION OF AN AWARD BY AN ARBITRATOR

OVERRULING OF ARBITRATOR'S AWARD

Mr. Parms Charging Pary Ward as stated in Responded email has been place in a credit card account, which is not consistent with AAA Rules, Charging Party did not understand the W-9 and only signed and dated the first form, after Responded explain the appropriate procedure Chargiing Party as you can see from the last W-9 it was completed as requested, from 1-7

CONCERNING THIS AWARD

THE WARD IS NOT BASE ON THE DAMAGES OR HARM AS TO CHARGING PARTY CREDIT REPORT, LOWERING BOTH CREDIT ACOUNTS, LOAN APPROVAL AT A LOWER RATE, OF INTEREST ON LOAN MORTGAGE APPLICATION

CHARGING PARTY COUNTERCLAIM WAS FOR 1.1 MILLION RESPONDENTS AT ONE POINT HAD STATED 1,000, CHARGING PARTY WILL BE ATTACKING AN ARBITRATION AWARD UNDER COMMON LAW; THAT LIST THE FOLLOWING THEY INCLUDE FRAUD, MISCONDUCT, AND GROSS UNFAIRMESS BY THE ARBITRATOR

CHARGING PARTY CONCERNS

IT APPEARS THAT THE ARBITRATOR SUBSTITUTED HIS JUDGMENT FOR THAT OF THE OTHER PARTIES, THE AWARD DOES NOT DRAW ITS ESSENCE FROM THE CONTRACT THE AWARD CONTAINS MATERIAL ERROR AND THE AWARD IS AGAINST PUBLIC LAW OR POLICY, ARBITRATOR SUBSTITUTED HIS JUDGMENT FOR THOSE OF MANAGEMENT AND NOT FOR CHARGING PARTY, CREDIT CARD CUSTOMER

AS WELL ARBITRATORS EXCEEDED HIS AUTUORITY UNDER AAA RULE

1

UNDER AAA RULE A MODIFICATION MUST BE ASKED FOR WITHIN (20) DAYS AFTER THE FINAL AWARD IS SENT TO THE PARTIES, THE OTHER PART WILL BE GIVEN (10) DAYS TO RESPOND TO THE REQUEST, THE ARBITRATOR WILL THEN RULE ON THE REQUEST WITHIN (20) DAYS

CHARGING PART WILL BE AT THIS TIME REQUESTING AND EXERCISING THE RIGHT TO MODIFICATION OF THAT AWARD OF 280.78 WHICH IS UNACCEPTABLE,

Thank, You

Charging Party /Marvin Parms

------------------------------------------

From: "Egan, Shannon"
To: "Marvin L Parms"
Cc: Harry", Shannon"
Sent: Wednesday January 11 2023 1:21:05PM
Subject: RE: Marvin Parms v. Citibank - Case 01-21-0017-6088

Mr. Parms – thank you for faxing the IRS W-9 form.  Unfortunately, it is not complete.  Please complete sections 1 – 7 and return the form to me.  I have attached a blank Form W-9 that is highlighted showing the portions that must be completed in addition to Parts I and II.  Thank you, Shannon Egan



**Shannon Egan**
Of Counsel
Dinsmore & Shohl LLP  •  Legal Counsel
255 East Fifth Street, Suite 1900, Cincinnati, OH 45202
T (513) 977-8261  •  F (513) 977-8141

**From:** Marvin L Parms <█████████████████>
**Sent:** Friday, January 6, 2023 4:27 PM
**To:** Egan, Shannon <Shannon.Egan@DINSMORE.COM>
**Cc:** Cappel, Harry <Harry.Cappel@DINSmore.COM>
**Subject:** RE: FW: Marvin Parms v. Citibank - Case 01-21-0017-6088
**Importance:** High

Shannon Egan

Mr. Parms will sign, and Fax as requested, but will respond appropriately after check has been forwarded, within (20) days to AAA, Rule, keep in mind the Best Buy Credit Card Agreement, Citibank, N.A. Customer Rights Policy, as well Citibank, N.A. Card Agreement Guide, Christy, Bennett, Shannon O'Connell was never or not a part of Mr. Parms demand for arbitration, this violation will be address in a deferent manner

Thank, You


Marvin Parms

------------------------------------------

From: "Egan, Shannon"
To: "Marvin L Parms"
Cc: Harry", Shannon"
Sent: Tuesday January 3 2023 9:32:53AM
Subject: FW: Marvin Parms v. Citibank - Case 01-21-0017-6088

Dear Mr. Parms:


For Citibank, N.A. to pay the Arbitrator's Award to you via check, it must have a completed IRS Form W-9.  For your convenience, I have attached a Form W-9 and highlighted the portions that must be completed.  Upon receiving the completed Form W-9, I will ask Citibank, N.A. to prepare a check made payable to you in the amount of $280.78 (the amount of the Award).


If you prefer, or if you choose not to provide the Form W-9, Citibank, N.A. will apply a credit in the amount of $280.78 (the amount of the Award) to your My Best Buy credit card account ending in 4853.  Thank you.




**Shannon Egan**
Of Counsel
Dinsmore & Shohl LLP  •  Legal Counsel
255 East Fifth Street, Suite 1900, Cincinnati, OH 45202
T (513) 977-8261  •  F (513) 977-8141




**From:** ProSeManager2@adr.org <ProSeManager2@adr.org>
**Sent:** Friday, December 23, 2022 2:35 PM
**To:** Egan, Shannon <Shannon.Egan@DINSMORE.COM>; ▇▇▇▇▇▇▇▇▇▇▇▇▇▇
**Cc:** Cappel, Harry <Harry.Cappel@DINSmore.COM>
**Subject:** Marvin Parms v. Citibank - Case 01-21-0017-6088

Hello,

Please review the attached correspondence regarding the above-referenced case.

Feel free to contact me with any questions, comments or concerns you have related to this matter.

Thank you.



**Pro Se Manager 2**
**Pro Se Manager of ADR Services**

Pro Se Arbitration Administration Team
F: 866 644 0234   E: ProSeManager2@adr.org
PO Box 19609, Johnston, RI 02919
www.adr.org/prose



The information in this transmittal (including attachments, if any) is privileged and/or confidential and is intended only for the recipient(s) listed above. Any review, use, disclosure, distribution or copying of this transmittal is prohibited except by or on behalf of the intended recipient. If you have received this transmittal in error, please notify me immediately by reply email and destroy all copies of the transmittal. Thank you.

NOTICE: This electronic mail transmission from the law firm of Dinsmore & Shohl may constitute an attorney-client communication that is privileged at law. It is not intended for transmission to, or receipt by, any unauthorized persons. If you have received this electronic mail transmission in error, please delete it from your system without copying it, and notify the sender by reply e-mail, so that our address record can be corrected.

**Exhibit**

**5**

**AMERICAN ARBITRATION ASSOCIATION**

|  |  |
|---|---|
| MARVIN L. PARMS, | CASE NO. 01-21-0017-6088 |
| Claimant, | |
| v. | **NOTICE OF PAYMENT OF AWARD** |
| CITIBANK, N.A., | |
| Respondent. | |

Respondent Citibank, N.A., ("Citibank") provides notice of payment of the Award of Arbitrator, and further states as follows:

On December 23, 2022, an Award of Arbitrator was issued in favor of Claimant Marvin Parms ("Parms") in the sum of $280.78 (the "Award"). On January 3, 2023, the undersigned counsel for Citibank requested that Parms sign and return an IRS Form W-9, which is required for Citibank to issue a check. Parms has refused to provide a properly completed IRS Form W-9. On or about January 13, 2023, Parms provided the attached. *See* Exhibit A hereto. For this reason, and in lieu of a check to Parms, Citibank applied a credit in the amount of the Award to Parms' Best Buy card account ending in 4853, resulting in a credit balance of $280.78. *See* Exhibit B hereto.

Respectfully submitted,

/s/ *Shannon O'Connell Egan*
Shannon O'Connell Egan, Esq.
Harry W. Cappel, Esq.
DINSMORE & SHOHL LLP
255 East Fifth Street, Suite 1900
Cincinnati, Ohio 45202
Tel: (513) 977-8261
Fax: (513) 977-8141
Email: shannon.egan@dinsmore.com
        harry.cappel@dinsmore.com
*Counsel for Respondent Citibank, N.A.*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that the foregoing was electronically filed this 24th day of January 2023, and served upon the following via electronic mail:

Marvin L. Parms, pro se
1964 Hibbard Drive
Stow, OH 44224
marvinparms@neo.rr.com

Pro Se Manager 2
American Arbitration Association
P.O. Box 19609
Johnston, RI  02919
ProSeManager2@adr.org


/s/ *Shannon O'Connell Egan*
Shannon O'Connell Egan, Esq.


28116568.1

Exhibit
**A**

## Egan, Shannon

| | |
|---|---|
| **From:** | ████████████████████████████ |
| **Sent:** | Friday, January 13, 2023 9:02 AM |
| **To:** | Egan, Shannon |
| **Subject:** | FW: Marvin Parms ( 1 page ) |
| **Attachments:** | 3847983118911.DOCUMENT.PDF.pdf |

████████████████

**From:** DINSFAX ████████████████████
**Sent:** Friday, January 13, 2023 8:07 AM
**To:** ████████████████████████
**Subject:** Marvin Parms ( 1 page )

**From:** ████████████████████████
**Sent:** Friday, January 13, 2023 6:24 AM
**To:** DINSFAX <dinsfax@dinsmore.com>
**Subject:** Fax Received: 3307947540

**Delivery Information:**

Message #:          28756

Remote CSID:     3307947540
Total Pages:       1

Receive Time:    1/13/2023 6:23:24 AM
Transmit Time:   45 sec

1

SHANNON EGAN    FAX 513 977 8141

| Form **W-9** | **Request for Taxpayer** | **Give Form to the** |
|---|---|---|
| (Rev. October 2018) | **Identification Number and Certification** | **requester. Do not** |
| Department of the Treasury Internal Revenue Service | ▶ Go to *www.irs.gov/FormW9* for instructions and the latest information. | **send it to the IRS.** |

1 Name (as shown on your income tax return). Name is required on this line; do not leave this line blank. MARVIN PARMS   *THIS DOCUMENT IS FRAUD*

2 Business name/disregarded entity name, if different from above   N/A

3 Check appropriate box for federal tax classification of the person whose name is entered on line 1. Check only one of the following seven boxes.

☑ Individual/sole proprietor or single-member LLC   ☐ C Corporation   ☐ S Corporation   ☐ Partnership   ☐ Trust/estate

☐ Limited liability company. Enter the tax classification (C=C corporation, S=S corporation, P=Partnership) ▶

Note: Check the appropriate box in the line above for the tax classification of the single-member owner. Do not check LLC if the LLC is classified as a single-member LLC that is disregarded from the owner unless the owner of the LLC is another LLC that is not disregarded from the owner for U.S. federal tax purposes. Otherwise, a single-member LLC that is disregarded from the owner should check the appropriate box for the tax classification of its owner.

☐ Other (see instructions) ▶

4 Exemptions (codes apply only to certain entities, not individuals; see instructions on page 3):

Exempt payee code (if any) _____

Exemption from FATCA reporting code (if any) _____

*(Applies to accounts maintained outside the U.S.)*

5 Address (number, street, and apt. or suite no.) See instructions.   1964 HIBBARD DRIVE

6 City, state, and ZIP code   STOW, OHIO 44224

Requester's name and address (optional)   DRIVE   1964 HIBBARD   STOW, OHIO 44224

7 List account number(s) here (optional)

**Part I**   **Taxpayer Identification Number (TIN)**

Enter your TIN in the appropriate box. The TIN provided must match the name given on line 1 to avoid backup withholding. For individuals, this is generally your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the instructions for Part I, later. For other entities, it is your employer identification number (EIN). If you do not have a number, see *How to get a TIN*, later.

Note: If the account is in more than one name, see the instructions for line 1. Also see *What Name and Number To Give the Requester* for guidelines on whose number to enter.   N/A

Social security number   - 7 4 4 9

or

Employer identification number   - 

**Part II**   **Certification**

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me); and

2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding; and

3. I am a U.S. citizen or other U.S. person (defined below); and

4. The FATCA code(s) entered on this form (if any) indicating that I am exempt from FATCA reporting is correct.

Certification instructions. You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the certification, but you must provide your correct TIN. See the instructions for Part II, later.

| Sign Here | Signature of U.S. person ▶ _marvi parms_ | Date ▶ 1-6-2023 |
|---|---|---|

## General Instructions

Section references are to the Internal Revenue Code unless otherwise noted.

**Future developments.** For the latest information about developments related to Form W-9 and its instructions, such as legislation enacted after they were published, go to *www.irs.gov/FormW9*.

## Purpose of Form

An individual or entity (Form W-9 requester) who is required to file an information return with the IRS must obtain your correct taxpayer identification number (TIN) which may be your social security number (SSN), individual taxpayer identification number (ITIN), adoption taxpayer identification number (ATIN), or employer identification number (EIN), to report on an information return the amount paid to you, or other amount reportable on an information return. Examples of information returns include, but are not limited to, the following.

• Form 1099-INT (interest earned or paid)

• Form 1099-DIV (dividends, including those from stocks or mutual funds)

• Form 1099-MISC (various types of income, prizes, awards, or gross proceeds)

• Form 1099-B (stock or mutual fund sales and certain other transactions by brokers)

• Form 1099-S (proceeds from real estate transactions)

• Form 1099-K (merchant card and third party network transactions)

• Form 1098 (home mortgage interest), 1098-E (student loan interest), 1098-T (tuition)

• Form 1099-C (canceled debt)

• Form 1099-A (acquisition or abandonment of secured property)

Use Form W-9 only if you are a U.S. person (including a resident alien), to provide your correct TIN.

*If you do not return Form W-9 to the requester with a TIN, you might be subject to backup withholding. See What is backup withholding, later.*

click here to view message online

---

Delivered by **FAXFINDER X50**...



```
BS  ████████████ 4853
PARMS,MARVIN L                                              CRCD  840        01/24/23 07:46

CUR BAL                    280.78-   STTS CD INT/EX    /   HOME PHONE
CRDT LIMIT                     350   CYCLE CODE         5   WORK PHONE
AVLB CRDT                      350   OPEN DATE      04-09   SOC SEC #     ████████████
LS BAL                        0.00   EXP DATE       99-99   CHECKING
PRV H BAL                      281   PLST#     01 TYPE  33   SAVINGS
LST PMT AM                      30   LST PMT DT 04-04-22   ANNUAL CHARGE      00-00     0
AM DUE                           0   LST MON   01-20-23 X  CREDIT LINE        11-21     D

DSP                  0    0    0     LST NM 01-11-23 791   FX PY AM                  0.00
AM DLQ                           0   AUTH FLG   PIN TR  0  RENEWAL CODE 9    CONTROL 0
# DAYS DELINQUENT                0   OVERLIMIT HIST      0  USER FLAGS
# TIMES 1 CYCLE                  0   TERMS LEVEL         1  SPECIAL FLAGS
# TIMES 2 CYCLES                 1   HIST ZZZZ ZZZZ ZIII  MISC F    NNNBY
# TIMES 3 CYCLES                 0   REAGE COUNTER      00  MONTHS GROSS ACTIVE       8
RECOURSE FLAG                    N   STS CD CHG 07-10-13  DELQ SCENARIO          0000
CASH OUT                         0   AUTO PAYMNT FLAG  0  SCORE:  BH  012    CR
YTD INT                       0.00   CRDT BUREAU FLAG  1  CREDIT LIFE 0  / DUALITY 0
CROSS REFERENCE 1    0000000000000000 2   ████████████ 4853 3    0000000000000000
```

**Exhibit**

**B**